IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYWARD, INC.,<br><br>    Plaintiff,<br><br>   v.<br><br>NATHAN PETER RUNYON,<br><br>    Defendant. | Case No. 20-cv-02130-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING COMPLAINT WITH LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendant Nathan Peter Runyon's ("Runyon") Motion, filed May 29, 2020, "to Dismiss or Stay Plaintiff's Complaint," whereby Runyon seeks an order dismissing each of the four Claims for Relief asserted in the complaint, or, if the Court declines to do so, stay the instant action in light of an action Runyon has filed in state court. Plaintiff Payward, Inc. ("Payward") has filed opposition, to which Runyon has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the above-titled action, Payward, a company that operates "a global cryptocurrency exchange" (see Compl. ¶ 1), asserts claims against Runyon, a former employee, two of which claims, specifically, the First and Third Claims for Relief, arise under federal law.

In the First Claim for Relief, Payward asserts that Runyon, who, during the course of his employment, had access to Payward's "confidential" and "trade-secret information"

---

[1] By order filed July 10, 2020, the Court took the matter under submission.

(see Compl. ¶¶ 5, 7), violated the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831-39. In support thereof, Payward alleges that Runyon, after his employment had been terminated, (1) disclosed Payward's "physical address" in a complaint he filed in the public record in a state court action (see Compl. ¶¶ 12-13, 53),[2] and (2) "produced" to Payward a "copy of Payward's November 2017 board minutes" when he presented to Payward a "demand letter" prior to filing the above-referenced state court action (see Compl. ¶ 43).

In the Third Cause of Action, Payward asserts that Runyon, after his employment had terminated, "accessed" a "Company-issued laptop" (see Compl. ¶¶ 5, 75-80), in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. In support thereof, Payward alleges that Runyon did not return his laptop (see Compl. ¶¶ 5, 8-10) and "continued to access the trade secrets and confidential business information" on the laptop (see Compl. ¶ 11), specifically, the "board minutes" referenced above. (See id.).[3]

In addition, Payward asserts two claims arising under state law, specifically, the Second Claim for Relief, by which Payward alleges that Runyon, in violation of state law, misappropriated Payward's trade secrets, and the Fourth Claim for Relief, by which Payward alleges that Runyon breached the terms of an employment agreement when he misappropriated Payward's trade secrets and publicly disclosed Payward's physical address.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

---

[2] In the state court action, Runyon alleges he was wrongfully terminated by Payward on account of his status as a veteran and as an assertedly disabled person, as well as in retaliation for his having reported to Payward that certain of its employees had engaged in fraudulent conduct. (See Def.'s Req. for Judicial Notice Ex. 1.)

[3] Payward alleges that Runyon "[e]ventually" agreed to return the laptop, but, that, on the date he promised to do so, he reported to Payward that it had been "stolen from his vehicle." (See Compl. ¶ 10.)

under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

In his motion, Runyon argues that Payward's two federal claims are subject to dismissal under Rule 12(b)(6), and that the Court should decline to exercise supplemental jurisdiction over Payward's two state law claim. The Court first considers Payward's federal claims.

**A. First Claim for Relief:  DTSA**

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." See 18 U.S.C. § 1836(b)(1).

Runyon argues that Payward has failed to plead sufficient facts to support a

3

finding that Runyon misappropriated any of Payward's trade secrets.

A "trade secret," for purposes of the DTSA, is defined as "all forms and types" of "information," if "the owner thereof has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." See 18 U.S.C. § 1839(3). "[T]he focus of the inquiry regarding the independent economic value element is on whether the information is generally known to or readily ascertainable by business competitors or others to whom the information would have some economic value." Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc., 226 Cal. App. 4th 26, 62 (2014) (internal quotation and citation omitted);[4] see also United States v. Chung, 659 F.3d 815, 826 (9th Cir. 2011) (noting courts, in determining whether independent economic value element is established, "most often consider the degree to which the secret information confers a competitive advantage on its owner"); Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1522 (1997) (noting independent economic value "has been interpreted to mean that the secrecy of [the] information provides a business with a substantial business advantage") (internal quotation and citation omitted).

Here, Payward alleges that keeping its physical address secret serves to protect it from "physical security threats," providing as an example of such threats "a recent spate of kidnappings" of persons who work for cryptocurrency exchanges. (See Compl. ¶ 28.) Payward not allege, however, how its competitors would gain an economic advantage by learning Payward's physical address. See Cisco Systems v. Chung, 2020 WL 4505509,

---

[4] The DTSA is "largely modeled after the Uniform Trade Secrets Act," as is the California Uniform Trade Secrets Act ("CUTSA"), see Deerpoint Group, Inc. v. Agrigenix, LLC, 345 F. Supp. 3d 1207, 1227 (E.D. Cal. 2018), and the definitions of "trade secret" and "misappropriation" in the DTSA and the CUTSA are "substantially identical," see Veronica Foods Co. v. Ecklin, 2017 WL 2806706, at *12 (N.D. Cal. June 29, 2017). For this reason, in analyzing DTSA claims, federal courts have often looked to state law. See, e.g., Deerpoint, 345 F. Supp. 3d at 1227-28.

at *5 (N.D. Cal. August 5, 2020) (holding "secrecy itself does not establish value) (emphasis in original).

Further, "[t]o sustain a trade secrets action under the 'use' prong of the statutory definition of 'misappropriation,' a plaintiff must necessarily demonstrate that the defendant received some sort of unfair trade advantage." See JustMed, Inc. v. Byce, 600 F.3d 1118, 1130 (9th Cir. 2010).  Here, Payward, in its complaint, has not alleged Runyon used Payward's board minutes and address to gain a competitive advantage. See id. (holding plaintiff must "actually put the trade secret to some commercial use"; noting "[t]he law governing protection of trade secrets essentially is designed to regulate unfair competition, and is not a substitute for . . . civil remedies for conversion").

Accordingly, the First Claim for Relief is subject to dismissal.

**B. Third Claim for Relief:  CFAA**

The CFAA provides that certain conduct involving unauthorized access to a computer is unlawful.  In its complaint, Payward asserts Runyon violated four subsections of the CFAA, specifically, §§ 1030(a)(2)(A), 1030(a)(2)(C), 1030(a)(4), and 1030(5)(c), which subsections provide as follows:

> (a) Whoever –
>   . . .
>   (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains --
>     (A) information contained in a financial record of a financial institution; [or]
>     . . .
>     (C) information from any protected computer;[5]
>   . . .
>   (4)  knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access,

---

[5] A "protected computer" is a computer (a) "exclusively for the use of a financial institution . . ., or, in the case of a computer not exclusively for such use, used by or for a financial institution . . . and the conduct constituting the offense affects that use by or for the financial institution" or (b) "used in or affecting interstate or foreign commerce or communication."  See 18 U.S.C. § 1030(e)(2).

5

> and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period; [or]
>
> (5) . . . (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss[;]
>    . . .
>
> shall be punished . . . . [by] a fine . . . or imprisonment . . . .

See 18 U.S.C. §§ 1030(a), (c).  Additionally, "[a]ny person who suffers damage or loss by reason of a violation of [§ 1030] may maintain a civil action against the violator," see 18 U.S.C. § 1030(g), where the conduct causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value," see 18 U.S.C. § 1030(c)(4)(A)(i)(I).[6]

Runyon argues Payward has failed to allege facts sufficient to state a claim under the CFAA.  As set forth below, the Court agrees.

Payward's CFAA claim is based on Runyon's use of his company-issued laptop after his employment had been terminated.  The only such use identified in the complaint is Runyon's allegedly accessing his laptop to obtain the board minutes he later provided to Payward with his demand letter.  (See Compl. ¶ 11.)  Payward fails, however, to allege facts to support a finding that Runyon, by obtaining the board minutes, caused a loss to Payward of at least $5000, and, consequently, Payward fails to state a claim under any subsection of the CFAA.

Moreover, as to three of the above-quoted subsections, Payward fails to include other necessary allegations.  In particular, Payward fails to state a violation of § 1030(a)(2)(A), as the complaint includes no facts to support a finding that the board minutes constituted "information derived from any record . . . pertaining to a customer's relationship" with Payward, see 18 U.S.C. § 1030(e)(5) (defining "financial record"), fails to state a violation of § 1030(a)(4), as the complaint includes no facts to support a finding

---

[6] Although a private cause of action may be brought under other circumstances, see 18 U.S.C. § 1030(g), the only circumstance on which Payward relies is that set forth in § 1030(c)(4)(A)(i)(I).

that Runyon, when accessing the board minutes, acted with an intent to defraud Payward and that such access furthered any intended fraud, and fails to state a violation of § 1030(a)(5)(C), as the complaint includes no facts to support a finding that Runyon's accessing the laptop caused damage or loss, in any amount, to Payward.

Accordingly, the Third Claim for Relief is subject to dismissal.

**C. State Law Claims**

The Court has original jurisdiction over the above-titled action in light of the federal claims Payward has asserted (see Compl. ¶ 19); the Court's jurisdiction over the state law claims is supplemental in nature. See 28 U.S.C. § 1367(a). Where, as here, a court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3). Here, given the early stage of the proceedings, the Court declines to exercise supplemental jurisdiction over the state law claims.

Accordingly, the Second and Fourth Causes of Action will be dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Runyon's motion is hereby GRANTED, and the complaint is DISMISSED. Should Payward wish to file a First Amended Complaint, Payward shall do so no later than October 9, 2020.

In light of the above, the Case Management Conference is hereby CONTINUED from October 2, 2020, to January 15, 2021, at 10:30 a.m. A Joint Case Management Statement shall be filed no later than January 8, 2021.

**IT IS SO ORDERED.**

Dated: September 22, 2020

MAXINE M. CHESNEY
United States District Judge