IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYWARD, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NATHAN PETER RUNYON,<br><br>    Defendant. | Case No. 20-cv-02130-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND STAY ACTION** |

Before the Court is defendant Nathan Peter Runyon's ("Runyon") Motion, filed October 23, 2020, "to Dismiss or Stay Plaintiff's Complaint," whereby Runyon seeks an order dismissing each of the three Claims for Relief asserted in the Amended Complaint ("AC"), or, if the Court declines to do so, staying the instant action in light of an action Runyon has filed in state court.  Plaintiff Payward Inc. ("Payward") has filed opposition, to which Runyon has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the above-titled action, Payward, a company that operates "a global cryptocurrency exchange" (see AC ¶ 1), asserts claims against Runyon, a former employee, the first two of which arise under federal law.

In the First Claim for Relief, Payward asserts that Runyon, who, during the course of his employment, was issued a "laptop for use in his day-to-day activities and responsibilities," and on which laptop Runyon stored Payward's "confidential" and "trade-

---

[1] By order filed January 12, 2021, the Court took the matter under submission.

secret information" (see AC ¶¶ 5, 7), violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831-39.  In support thereof, Payward alleges that Runyon, after his employment had been terminated, retained the laptop and "cop[ied]" four specified documents containing trade secrets (see AC ¶¶ 52, 93), and, in addition, that Runyon thereafter "disclosed" and/or "used" the trade secrets set forth in those documents (see AC ¶¶ 94-95).  Payward also alleges Runyon disclosed Payward's "physical address," which it contends is a trade secret, in two documents Runyon filed in the public record in Runyon's state court action.  (See AC ¶¶ 14, 77.)

In the Second Claim for Relief, Payward asserts that Runyon, after his employment had terminated, "accessed" his "Company-issued laptop" (see AC ¶¶ 5, 107-08), in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  In support thereof, Payward alleges Runyon did not return his laptop when he was terminated (see Compl. ¶¶ 5, 8-10) but, rather, "continued to access the trade secrets and confidential business information" stored on the laptop (see Compl. ¶ 11).[2]

In addition, Payward asserts one claim arising under state law, specifically, the Third Claim for Relief, in which Payward alleges Runyon breached the terms of his employment agreement by "failing to return his laptop," by "retaining and copying" the above-referenced documents stored on the laptop, and by "publicly disclosing" Payward's physical address.  (See AC ¶ 113.)

**DISCUSSION**

**A. First and Second Claims for Relief:  Failure to State a Claim**

Runyon argues the First and Second Claims for Relief are subject to dismissal for failure to state a claim.

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

---

[2] Payward alleges that Runyon "[e]ventually" agreed to return the laptop, but, that, on the date he promised to do so, he reported to Payward that it had been "stolen from his vehicle."  (See AC ¶ 10.)

2

under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**1. First Claim for Relief: DTSA**

As noted, the First Claim for Relief asserts violations of the DTSA.

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." See 18 U.S.C. § 1836(b)(1). A "trade secret," for purposes of the DTSA, is defined as "all forms and types" of "information," if "the owner thereof has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the

3

information." See 18 U.S.C. § 1839(3). Acts of "misappropriation" prohibited by the DTSA include "acquisition of a trade secret . . . by a person who knows or has reason to know that the trade secret was acquired by improper means" and "disclosure or use of a trade secret . . . by a person who . . . used improper means to acquire knowledge of the trade secret." See 18 U.S.C. § 1839(5).

In an order granting Runyon's motion to dismiss the DTSA claim as alleged in the initial complaint, at which time the claim was based on two asserted trade secrets, the Court found one such secret, specifically, Payward's physical address, was not a trade secret and that, with respect to the other, specifically, information contained in minutes of a Board meeting, Payward had not identified any cognizable act of misappropriation.

In the FAC, Payward now identifies, along with the above, three additional documents it asserts contain trade secrets and alleges Runyon acquired, made use of, and/or disclosed each of those alleged trade secrets. Runyon again argues Payward's address is not a trade secret, and, with respect to the four documents, contends Payward has failed to plead facts sufficient to support a finding that Runyon misappropriated any trade secret contained therein.[3]

### a. Physical Address

Payward alleges it needs to keep its physical address secret to lessen the risk of criminal activity, "such as hacking and kidnapping." (See AC ¶ 33.) According to Payward, if "hackers" knew its location, they could "surveil[ ]" Payward employees and "exploit those employees to gain access to Payward's systems" (see AC ¶ 29), by, for example targeting them for a "spear phishing attack" (see AC ¶ 28). Payward also alleges its employees face threats posed by packages that may contain a bomb or are otherwise "weaponized." (See AC ¶¶ 34-35.) Runyon argues such concerns do not

---

[3] The Court, for purposes of the instant motion, assumes the subject documents contain trade secrets, as Runyon, at least at this stage of the proceedings, has not argued the information contained in them on which Payward relies is not protectible as a trade secret.

4

support a finding that Payward's address constitutes a trade secret.

Security is undoubtedly of major concern to Payward, and its desire to thwart criminal conduct of the type identified in the AC is understandable. As explained in the Court's order dismissing the initial complaint, however, keeping information secret is not itself sufficient to make such information a trade secret. (See Order, filed September 22, 2020, at 4:23 – 5:2 (citing Cisco Systems v. Chung, 2020 WL 4505509, at *5 (N.D. Cal. August 5, 2020) (holding "secrecy itself does not establish value) (emphasis in original)).) Rather, in order for secret information to have the status of a trade secret, the secrecy must "provide[ ] a business with a substantial business advantage." See Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1522 (1997).

In that regard, Payward now alleges "[s]ecurity is among the leading factors that consumers consider when selecting a trading platform" (see AC ¶ 23), that a competing cryptocurrency exchange was the victim of hackers who stole "approximately $5 million" in "Bitcoin" from that exchange's customers (see AC ¶ 26), and that other companies have been similarly targeted by hackers (see AC ¶¶ 27-28). Although Payward has not expressly alleged consumers are likely to link a company's business address to their concerns about keeping their funds and personal information secure, and, although Payward's allegations as to how a potential hacker could use its address are, in essence, speculative,[4] the Court finds, at this stage of the proceedings, Payward's allegations suffice to plead a trade secret.

Accordingly, to the extent the First Claim for Relief is based on the disclosure of Payward's physical address, the claim is not subject to dismissal.[5]

---

[4] Payward does not allege any hacker has obtained access to any company's computer systems by engaging in surveillance, let alone surveillance of a building the size of the one described on the website for the building identified by Runyon as Payward's office address.

[5] In his reply, Runyon asserts that Payward's Confidentiality Agreement does not include any provision requiring employees to keep Payward's location secret and that Payward never otherwise advised him the location was a secret. Although these assertions, if true, would appear to foreclose a finding that Payward's physical address is a trade secret, see 18 U.S.C. § 1839(3)(A) (providing owner of alleged "trade secret"

### b. Board Minutes

Payward alleges its computer system contains "confidential Board minutes from November 2017" (see AC ¶ 53), which minutes include "trade secrets," specifically, information about "the stock option packages for a large number of Payward employees" (see AC ¶¶ 52, 55). Payward alleges Runyon "unlawfully acquired" the Board minutes by "making a copy after his termination" (see AC ¶ 53), that he subsequently "disclosed" the Board minutes to another individual (see AC ¶ 54), and that he "contacted Payward [and] us[ed] the illicitly copied document in an effort to leverage a settlement" in his civil action against Payward (see AC ¶ 56).

In light of Payward's allegation that Runyon, after his employment was terminated, copied the Board minutes in violation of the parties' "Confidentiality Agreement" (see AC ¶¶ 41, 53), the Court finds Payward sufficiently alleges such post-termination copying constituted an "acquisition" in violation of the DTSA. See 18 U.S.C. § 1839(5)(A) (prohibiting "acquisition of a trade secret by a person who knows . . . the trade secret was acquired by improper means"); 18 U.S.C. § 1839(6) (providing "improper means" include "breach of a duty to maintain secrecy").[6]

Additionally, the Court finds Payward has sufficiently alleged Runyon engaged in a prohibited "disclosure," see 18 U.S.C. § 1839(5)(B), when he assertedly gave the Board minutes to "another Payward employee" who "did not have access to the document during her employment" (see AC ¶ 54).

By contrast, with respect to the third asserted theory of liability, namely, that Runyon "used" the Board minutes, see 18 U.S.C. § 1839(5)(B), the Court finds the AC

---

must "take[ ] reasonable measures to keep [the] information secret"), the Court cannot consider them at this time, see Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (holding, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a [party's] papers").

[6] Although Runyon, in his reply, denies he made any use of the laptop after his termination, including using it to copy documents, the Court, at the pleading stage, assumes Payward's factual allegations are true. See NL Indus., 792 F.2d at 898.

deficient, as the alleged use, discussing the Board minutes' contents with Payward in the course of attempting to settle Runyon's state court claims (see AC ¶ 56), is not a "commercial use."  See JustMed, Inc. v. Byce, 600 F.3d 1118, 1130 (9th Cir. 2010) (holding defendant can be held liable for "use" of trade secret only where defendant "actually put the trade secret to some commercial use," i.e., that such defendant "received some sort of unfair trade advantage"; observing "law governing protection of trade secrets . . . is not a substitute for criminal laws against theft or other civil remedies for conversion").

Accordingly, to the extent the First Claim for Relief is based on theories of unlawful acquisition and disclosure of the Board minutes, the claim is not subject to dismissal, and to the extent the claim is based on a theory of unlawful use, the claim is subject to dismissal.

### c. Confidentiality Agreement

Payward alleges a "Confidentiality Agreement" Runyon signed prior to the beginning of his employment with Payward (see AC ¶ 43) contained trade secrets, such as details about "terms of employment" (see AC ¶ 59) and how "confidential information is protected" (see AC ¶ 60).  Payward also alleges Runyon "unlawfully acquired" the Confidentiality Agreement by "making a copy after his termination" (see AC ¶ 58), and, in addition, that he made use of said copy when he "produced" it to Payward in the course of his state court action (see AC ¶ 64).

In light of Payward's allegation that Runyon, after his employment was terminated, copied the Confidentiality Agreement in violation of its terms (see AC ¶¶ 41, 58) the Court finds Payward sufficiently alleges Runyon acquired a copy of the Confidentiality Agreement in violation of the DTSA.  See 18 U.S.C. § 1839(5)(A) (prohibiting "acquisition of a trade secret by a person who knows . . . the trade secret was acquired by improper means"); 18 U.S.C. § 1839(6) (providing "improper means" include "breach of a duty to

//
//

maintain secrecy").[7]

With respect to the theory that Runyon made use of the Confidentiality Agreement when he "produced" it to Payward in his civil lawsuit, however, the Court finds the AC deficient, as such alleged use does not constitute "commercial use." See JustMed, 600 F.3d at 1130.

Accordingly, to the extent the First Claim for Relief is based on a theory of unlawful acquisition of the Confidentiality Agreement, the claim is not subject to dismissal, and to the extent the claim is based on a theory of unlawful use, the claim is subject to dismissal.

### d. Employment Agreement

Payward alleges the "employment agreement" between Runyon and Payward contained trade secrets, such as details about Runyon's "terms of employment" including his "job duties, title, compensation and benefits." (See AC ¶ 63.). Payward also alleges Runyon acquired the employment agreement by making an "unauthorized copy" after his termination (see AC ¶ 62), and, in addition, used said copy when he "produced" it to Payward in the course of his state court action (see AC ¶ 64).

In light of Payward's allegation that Runyon, after his employment was terminated, copied the employment agreement in violation of its terms (see AC ¶ 62) the Court finds Payward sufficiently alleges Runyon acquired a copy of his employment agreement in violation of the DTSA. See 18 U.S.C. § 1839(5)(A) (prohibiting "acquisition of a trade secret by a person who knows . . . the trade secret was acquired by improper means"); 18 U.S.C. § 1839(6) (providing "improper means" include "breach of a duty to maintain secrecy").

---

[7] The Court does not read the AC as alleging Runyon would be in violation of the DTSA by retaining, after his termination, a copy of the Confidentiality Agreement he may have been provided during the course of his employment, given his status as a party to the agreement and its imposition of obligations that continue beyond the termination of the employment relationship. (See AC ¶ 41.) Rather, the Court understands the claim to be limited to Runyon's allegedly making an additional copy of such document.

8

With respect to the theory that Runyon made use of the employment agreement when he "produced" it in the course of his civil lawsuit against Runyon, however, the Court, for the reasons stated above, finds the AC deficient.

Accordingly, to the extent the First Claim for Relief is based on a theory of unlawful acquisition of his employment agreement, the claim is not subject to dismissal, and to the extent the claim is based on a theory of unlawful use, the claim is subject to dismissal.

### e. Email Exchange

Payward alleges its computer system contains a "twenty-one page email exchange" between its "lawyers" and its "employees," which exchange includes information about Payward's "stock option packages and share values for a large number of Payward employees and shareholders," the "details of various valuations" of Payward, and "details . . . of investments made by third parties." (See AC ¶¶ 66-68.) Payward also alleges Runyon "unlawfully acquired" the email exchange by "making a copy after his termination" (see AC ¶ 66), and, in addition, that he made use of the email exchange when he "produced" it to Payward in the course of his state court action (see AC ¶ 69).

In light of Payward's allegation that Runyon, after his employment was terminated, copied the email exchange in violation of the terms of his employment agreement (see AC ¶ 66) the Court finds Payward sufficiently alleges Runyon acquired a copy of the email exchange in violation of the DTSA. See 18 U.S.C. § 1839(5)(A) (prohibiting "acquisition of a trade secret by a person who knows . . . the trade secret was acquired by improper means"); 18 U.S.C. § 1839(6) (providing "improper means" include "breach of a duty to maintain secrecy").

With respect to the theory that Runyon made use of the email exchange when he "produced" it to Payward in the course of his civil lawsuit, however, the Court, for the reasons stated above, finds the AC deficient.

Accordingly, to the extent the First Claim for Relief is based on a theory of unlawful acquisition of the email exchange, the claim is not subject to dismissal, and to the extent the claim is based on a theory of unlawful use, the claim is subject to dismissal.

**2. Second Claim for Relief:  CFAA**

Payward asserts Runyon violated two subsections of the CFAA, specifically, §§ 1030(a)(2)(C) and 1030(a)(5)(c), which provide:

> (a) Whoever –
>   . . .
>   (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains --
>     (C) information from any protected computer;[8]
>   . . .
>   [or]
>
>   (5) . . . (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss[;]
>   . . .
> shall be punished . . . . [by] a fine . . . or imprisonment.

See 18 U.S.C. §§ 1030(a), (c).

The CFAA further provides that "[a]ny person who suffers damage or loss by reason of a violation of [§ 1030] may maintain a civil action against the violator," see 18 U.S.C. § 1030(g), where such violation causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value," see 18 U.S.C. § 1030(c)(4)(A)(i)(I).[9] "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost

---

[8] The term "protected computer" includes a computer "used in or affecting interstate or foreign commerce or communication."  See 18 U.S.C. § 1030(e)(2)(b). Payward has sufficiently alleged the laptop Runyon allegedly used is such a computer, as "all computers with Internet access" are computers "affected by or involved in interstate commerce," see United States v. Nosal, 676 F.3d 854, 859 (9th Cir. 2012), and Runyon's laptop necessarily would have had such access in order for him to remotely copy documents located in Payward's system.

[9] Although a private cause of action may be brought under other circumstances, see 18 U.S.C. § 1030(g), Payward relies solely on the circumstance set forth in § 1030(c)(4)(A)(i)(I).

10

incurred, or other consequential damages incurred because of interruption of service." See 18 U.S.C. § 1030(e)(11).

Payward's CFAA claim is based on Runyon's accessing Payward's system by using his company-issued laptop after his employment had been terminated and copying four documents, specifically, the above-referenced Board minutes, Confidentiality Agreement, employment agreement, and email exchange. (See AC ¶¶ 5, 11, 53, 58, 62, 66.)

In its order dismissing the CFAA claim as alleged in the initial complaint, the Court found Payward failed to allege facts to support a finding that Runyon, by using his company-issued laptop to copy a document,[10] caused any loss to Payward, let alone a loss of at least $5000.

In the AC, Payward has added factual allegations identifying five claimed losses. (See AC ¶¶ 80-84.) The Court finds three of those claimed losses fit within the statutory definition of "loss," specifically Payward's having "assessed the damage by reviewing the documents" allegedly copied (see AC ¶ 82), "evaluated the logs related to Runyon's departure" (see AC ¶ 83), and "review[ed] the shortcomings in software used by Payward for securing company computers after involuntary terminations" (see AC ¶ 84). See 18 U.S.C. § 1030(e)(11) (providing "loss" includes cost of "responding to an offense" and "conducting a damage assessment"). As to Payward's "evaluating whether Runyon's laptop was truthfully stolen" and its alleged inability to "repurpose the laptop for," i.e., give it to, "a new employee" (see AC ¶¶ 80-81), however, the Court finds such alleged losses do not fall within the definition of "loss," as neither was caused by the alleged violation, i.e., by Runyon's accessing Payward's system to copy documents, but, rather, by Runyon's having retained the laptop, an act not covered by the CFAA. See 18 U.S.C. § 1030(g) (limiting private cause of action under CFAA to plaintiff who "suffers damages

---

[10] The violation asserted in the initial complaint was Runyon's alleged copying of one document, specifically, the Board minutes.

11

or loss by reason of a violation of [CFAA]").

As to Payward's allegation that the costs attributable to the first three losses identified above exceed the sum of $5000 (see AC ¶¶ 82-84), Runyon argues such expenditures are insufficient to meet the statutory minimum, for the asserted reason that they do not constitute "damage," which, under CFAA, is defined as "any impairment to the integrity or availability of data, a program, a system, or information." See 18 U.S.C. § 1030(e)(5). A plaintiff bringing a private cause of action under CFAA is not required, however, to show it incurred "damage"; rather, as noted, it may bring such a claim where it alleges a "loss," specifically, a loss "aggregating at least $5,000 in value." See 18 U.S.C. § 1030(c)(4)(A)(i)(I).[11]

Accordingly, the Second Claim for Relief is not subject to dismissal.

## B. Third Claim for Relief:  Supplemental Jurisdiction

In its Third Claim for Relief, Payward alleges a claim for breach of contract, which claim is based on Runyon's "failing to return his laptop," his "retaining and copying [Payward's] confidential information," and his disclosing Payward's "business address." (See AC ¶ 113.)  The Court has supplemental jurisdiction over said state law claim. (See AC ¶ 20.)

Runyon argues that, in the event the Court dismisses Payward's federal claims, i.e., the First and Second Claims for Relief, the Court should decline to exercise supplemental jurisdiction over Payward's state law claim, i.e., the Third Claim for Relief. As discussed above, however, a considerable part of the First Claim for Relief is not subject to dismissal, and the Second Claim for Relief is going forward in its entirety.

Accordingly, the Third Claim for Relief is not subject to dismissal.

//

---

[11] A question may exist as to whether a plaintiff, such as Payward here, can respond to a violation by assigning its own employees to the task (see AC ¶¶ 83-84), and base its claimed amount of loss on what it would have been charged if it had hired an outside contractor to perform that work.  As the matter is not addressed by either party, the Court does not further address it herein.

**C. All Claims:  Dismissal under California Code of Civil Procedure § 426.30**

Relying on his state court complaint, in which he alleges he was wrongfully terminated on account of his status as a veteran and as an assertedly disabled person, as well as in retaliation for his having reported that some of Payward's employees had engaged in fraud (see Def.'s Req. for Judicial Notice, filed May 29, 2020, Ex. 1), Runyon contends all of Payward's claims should be dismissed under § 426.30(a) of the California Code of Civil Procedure, which, in relevant part, provides as follows:

> [I]f a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

See Cal. Code Civ. Proc. § 426.30(a); Cal. Code Civ. Proc. § 426.10(c) (defining "related cause of action" as "cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint").[12]

Payward argues § 426.30(a) does not apply where the earlier action is pending in state court and the assertedly related cause of action is pending in federal court.  As set forth below, the Court agrees.

Section 426.30 is procedural in nature and, consequently, under Erie R. Co. v. Tompkins, 304 U.S. 64 (1933), is inapplicable to claims pending in federal court.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996) (holding, "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law"); see also Angel v. Bullington, 330 U.S. 183, 192 (1947) (holding, with respect to federal claims, "the limitations upon the courts of a State do not control a federal court sitting in the State").  Indeed, application of § 426.30 to a complaint pending in federal court would be contrary to the general rule that a district court must exercise

---

[12] Runyon's state court complaint was filed before Payward filed the instant federal action.

13

jurisdiction over a federal action even if the same issues are pending in a separate state court action.  See Kline v. Burke Const. Co., 260 U.S. 226, 230–32 (1922) (holding where "same issues are to be tried and determined" simultaneously in state and federal actions, "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court"); see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817–819 (1976) (holding federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"; further holding that only where "exceptional" circumstances exist may district court depart from general rule that "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction") (internal quotation and citation omitted).

Runyon's reliance on Cheiker v. Prudential, 820 F.2d 334 (9th Cir. 1987) is unavailing.  There is no question that, as an exception to the above-referenced general rule, a bar can arise when "a judgment is rendered in one of the courts and pleaded in the other," see Kline, 260 U.S. at 230, which was the situation presented in Cheiker, see Cheiker, 820 F.2d at 336-37 (affirming district court's dismissal of complaint; finding where, under § 426.30, claims should have been brought as cross-claims in state court, "final judgment in the state court action" precluded bringing claims in separate action).  That situation is not, however, presented here, no judgment having been entered in Runyon's state court case, and, absent a final judgment entered in a state court action, § 426.30(a) has no application in federal court.  See, e.g., Brenner v. Mitchum, Jones & Templeton, Inc., 494 F.2d 881, 881–82 (9th Cir.1974) (holding, where state law required plaintiff to bring claims as cross-claims in state court action, plaintiff's federal complaint "barred by collateral estoppel" in light of "dismissal with prejudice" of state court action).

Accordingly, the instant action is not subject to dismissal under § 426.30(a).

**D.  All Claims:  Stay in Light of State Court Action**

Runyon argues that the Court should, under the "Colorado River" doctrine, see Colorado River, 424 U.S. at 817-19, stay the instant federal action in favor of his state court action.

14

As noted above, a federal court may depart from its "virtually unflagging obligation" to exercise jurisdiction only where "exceptional" circumstances exist. See id. at 817-18. To determine whether exceptional circumstances exist in a particular case, a district court is required to consider whether (1) "[t]here was an assumption by either court of jurisdiction over any res or property," see Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1, 19 (1983), (2) "the federal forum [is] any less convenient to the parties than the state forum," see id., (3) there is a "danger of piecemeal litigation," see id. at 21, (4) the state forum "obtained and exercised jurisdiction" before the federal forum, see id., (5) "federal law provides the rule of decision on the merits," see id. at 23, and (6) "the probable inadequacy of the state-court proceeding to protect [the federal plaintiff's] rights" has been shown, see id. at 26.[13]

Here, the first of the above-identified factors is not applicable, as neither the federal nor state case involves a res. Although the fourth and sixth factors weigh in favor of a stay, given that the state action was filed first and there is no showing the state court is unable to adequately protect Payward's rights with respect to the claims pending in said forum, the three remaining factors, as set forth below, weigh against a stay

As to the second factor, the parties agree the federal forum is not inconvenient. (See Def.'s Mot. at 17:25-27; Pl.'s Opp. at 24:23.) As to the fifth factor, there can be no dispute that federal law provides the rule of decision on the merits of Payward's two federal claims. As to the third factor, there is little possibility of "piecemeal litigation" if the federal action proceeds, given that the state court action challenges the termination of Runyon's employment whereas the federal action challenges Runyon's conduct after that termination and Runyon fails to point to any overlap in the evidence. See American Int'l Underwriters, 843 F.3d at 1258 (holding "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching

---

[13] Although "additional factors" may be considered, see American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1257 (9th Cir. 1988), neither party has identified any factor other than the six identified above.

15

different results").

Accordingly, Runyon's request for a stay of the instant action will be denied.

## CONCLUSION

For the reasons stated above, Runyon's motion to dismiss and to stay is hereby GRANTED in part and DENIED in part, as follows.

1. To the extent the First Claim for Relief is based on a theory that Runyon made use of a trade secret by producing it to Payward, the motion is GRANTED and the First Claim for Relief is, to such extent, hereby DISMISSED.

2. In all other respects, the motion is hereby DENIED.

No later than February 9, 2021, Runyon shall file an answer to the claims remaining in the action.

**IT IS SO ORDERED.**

Dated: January 25, 2021

MAXINE M. CHESNEY
United States District Judge